IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |  | |
|---|---|---|---|
| VADA TAYLOR, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | CV 321-014 | |
| | ) | | |
| BEVERLEY MURRAY and MISTY WINTER, | ) ) | | |
| | ) | | |
| Defendants. | ) | | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, commenced the above-captioned civil rights case *pro se* and is proceeding *in forma pauperis* ("IFP"). Defendants filed a pre-answer motion to dismiss. (Doc. no. 27.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**.

I.   BACKGROUND

   A.   Procedural History

Plaintiff initially named four Defendants, and because he is proceeding IFP, the Court screened the complaint. (See doc. nos. 1, 9, 10.) Without objection from Plaintiff, United States District Judge Dudley H. Bowen, Jr., dismissed one Defendant and all official capacity claims for monetary damages. (Doc. no. 12.) The Court allowed an Eighth Amendment deliberate indifference claim to proceed against the remaining Defendants based on allegations

of inadequate medical treatment of a leg injury, though the Court later dismissed Defendant Nurse Poole for failure to effect service. (Doc. nos. 9, 12, 26.)

Defendants Murray and Winter move to dismiss, arguing Plaintiff failed to exhaust his administrative remedies prior to filing his complaint. (See doc. no. 27-1.) Plaintiff did not respond to the motion, and it is therefore unopposed pursuant to Local Rule 7.5.

### B. Complaint Allegations

With respect to Defendants Murray and Winter, Plaintiff alleges the following facts in his complaint signed on February 1, 2021. (Doc. no. 1, pp. 6- 9.) One day at pill call, Plaintiff notified Defendant Murray of a leg injury. (Id. at 6.) Defendant Murray examined Plaintiff's leg and told him he would be called to medical to be treated; however, Plaintiff was never seen, and his leg injury continued to worsen. (Id.) Defendant Winter, who "is over all security matters," told Plaintiff she would escort him to medical but failed to do so. (Id.)

On December 30, 2019, Plaintiff awoke and "notice[d] a small and painful hole in [his] leg," which was excessively painful when touched. (Id. at 7.) Plaintiff could not walk due to the pain, which caused him to scream and fall down. (Id.) The following day, inmates carried Plaintiff to the dorm door to show Defendant Winter the severity of his injury during pill call. (Id.) Defendant Winter told Plaintiff to file a sick call request because there was nothing they could do. (Id.)

After filing a sick call request, Plaintiff took Motrin for the pain and went to sleep. (Id.) Plaintiff awoke to find his leg twice its normal size and the hole ten times larger than the day before. (Id.) Plaintiff did not receive medical assistance because it was the weekend, and he was escorted to the medical department four days later. (Id. at 7-8.) Plaintiff's blood was drawn to determine the source of the injury, and Plaintiff was given antibiotics for the

infection. (Id. at 8.) Plaintiff has yet to be informed of what caused the leg injury. (Id.) As of February 1, 2021, Plaintiff no longer had any swelling in his leg; however, his leg still causes him pain. (Id.)

For relief, Plaintiff requests compensatory and punitive damages. (Id. at 9.) As to the issue of exhaustion of administrative remedies, Plaintiff filed a grievance and states he "exhausted institutional grievance procedure[s]." (Id. at 3.) He states he also filed an appeal, which is now pending. (Id. at 4.)

Defendants produced the affidavit of Patricia Wilcox, the Alternative Grievance Counselor at TSP. (See doc. no. 27-2 (Wilcox Aff.).) The Alternative Grievance Counselor's responsibilities include ensuring compliance with the Georgia Department of Corrections ("GDOC") Grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. ¶ 2.) The Counselor identified one grievance Plaintiff filed at TSP, which concerns the events in question addressing deliberate indifference claims against Defendants. (Id. ¶¶ 12-13 & Ex. 2 (doc. no. 27-4).) There is no record of any appeal. (Wilcox Aff. ¶ 13 & Ex. 2.)

Specifically, Plaintiff filed Grievance Number 319629 on January 14, 2021, wherein he alleged he suffered an infection and swelling in his leg and "was left to [his] own devices" for over two weeks after asking for medical help. (Wilcox Aff. ¶ 13 & Ex. 3 (doc. no. 27-5).) The Warden denied the grievance on February 8, 2021, and Plaintiff signed for receipt of the response on February 11, 2021. (Doc. no. 27-5.) The Warden's Response informed Plaintiff he had seven days to file an appeal, (id.), but as explained above, there is no record that Plaintiff filed an appeal of the denial. (Wilcox Aff. ¶ 13; see also doc. no. 13-4.)

3

## II. DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES PRIOR TO FILING THIS LAWSUIT

### A. The Legal Framework

Where, as here, a defendant has filed a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the

4

Eleventh Circuit, "brought" as used in this section of the PLRA means "the filing or commencement of a lawsuit, not . . . its continuation." Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*); see also Goebert v. Lee Cty., 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the statute sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939-40 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

5

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### B. The Administrative Grievance Procedure

According to the Counselor, the administrative grievance procedure applicable in this case is the version of the GDOC's SOP Policy No. ("PN") 227.02, which became effective on May 10, 2019. (Wilcox Aff. ¶ 3 & Ex. 1 (doc. no. 27-3).)

The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). The administrative remedies procedure commences with filing the original grievance with a counselor or through a kiosk or tablet. Id. § IV(C)(1)(c-d). The grievance is forwarded to the grievance coordinator, who must screen the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id.

The SOP requires the Warden give a response to the counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). Once the offender receives the Warden's response, or if the time

allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a Central Office Appeal. Id. § IV(C)(2). The inmate has seven calendar days from the date he receives the response to the grievance to file a Central Office Appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § IV(C)(2)(e).

### C.     Plaintiff's Failure to Exhaust

Plaintiff signed his complaint on February 1, 2021, and signed his certificate of service on February 11, 2021, and the complaint was filed in the Southern District of Georgia on February 12, 2021. (Doc. no. 1, pp. 1, 9-10.) Plaintiff's grievance history establishes he filed one grievance related to the facts in the complaint, Grievance Number 319629. (Wilcox Aff. ¶¶ 12-13; doc. no. 27-4.) As Plaintiff did not respond to the motion to dismiss, there is no dispute this is the only grievance he filed concerning his claim against Defendants. Plaintiff dated his grievance January 14, 2021, and the Warden denied the grievance on February 8, 2021, within the forty-day time-period allowed. (Doc. no. 27-5, pp. 1, 5; PN 227.02 § IV(C)(1)(f)(v).) Plaintiff signed for receipt of the response on February 11, 2021. (Doc. no. 27-5, p. 1.) When Plaintiff signed for the response, the paperwork informed him he had seven days from receipt of the response to appeal. (Id.)

The Court recognizes Plaintiff generally stated in his complaint he "exhausted the institutional grievance procedure." (Doc. no. 1, p. 3.) However, Defendants produced evidence of Plaintiff's grievance history at TSP showing he filed one grievance related to the claims against Defendants but had not appealed the Warden's denial of that grievance. (Wilcox Aff. ¶¶ 11, 16; doc. nos. 13-4, 13-9.) Plaintiff did not dispute that evidence. In fact,

as explained below, Plaintiff admits he had not yet received a response to his grievance when he signed his complaint. (Doc. no. 1, p. 3.) Defendants therefore satisfied their burden under Turner. 541 F.3d at 1082-83.

Plaintiff states that his "grievance has not been responded to in the S.O.P. . . . time limit." (Doc. no. 1, p. 3.) He is incorrect – the warden responded to the grievance twenty-five days after it was filed – and even if he were correct the grievance process provides an inmate may proceed to step two and file an appeal if the time allowed for a response to the grievance has expired without action. PN 227.02 § IV(C)(2)(a)(ii). Thus, even if Plaintiff thought his grievance had been ignored by the Warden, to exhaust his administrative remedies, Plaintiff would have had to file an appeal. The record shows he did not.

Because Plaintiff did not exhaust his administrative remedies with respect to his claim against Defendants prior to initiating this lawsuit, the motion to dismiss should be granted. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261. Because the motion to dismiss should be granted based on Plaintiff's failure to exhaust, the Court need not address Defendants' other arguments for dismissal. (See doc. no. 27-2, pp. 7-11.)

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**, (doc. no. 27), and this case be **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 6th day of December, 2021, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA